UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

               vs.                              CRIMINAL NO. 3:20-MJ-553(SLM)

EDWARD GALPIN                           June 29, 2020

## <u>DEFENDANT'S MOTION FOR RELEASE</u>

The defendant in the above-captioned matter, Edward Galpin, respectfully moves for release pursuant to the Bail Reform Act, 18 U.S.C. §3142, *et seq*., and the Eighth Amendment to the United States Constitution. The conditions set forth, herein, are designed to assure the Court that he poses neither a flight risk nor a danger to the community. Mr. Galpin addresses those herein.

**I.       PROPSED CONDITIONS OF RELEASE.**

Mr. Galpin proposes the following conditions of release. Additionally, he includes some alternative conditions of release in the event any the proposed conditions were found to be unsuitable.

1.   Mr. Galpin would reside with his wife, Nicole Galpin, at their Stratford home, which they own. The address of this home has been disclosed to probation for investigation. Additionally, Mrs. Galpin would serve as a third-party custodian and co-sign an appropriate bond. Additionally, the Galpin's have no children. To the extent there has been a suggestion that a relative with a child resides in the home, that person has been, or will be, relocated.

2.   Mr. and Mrs. Galpin will post the same home as security for an appropriate bond. Mrs. Galpin is continuing to collect records in support of this condition. However, she has provided counsel with a photograph of the deed demonstrating fee simple ownership of

the property which counsel will share with probation. The deed indicates the Galpins purchased the property for $228,000 in April of 2010. Mr. Galpin estimates that the couple owes $190,000 on the property.[1] According to the Zillow.com "Zestimate," the property is currently worth $264,931. Additionally, the most recent tax record available on the Town of Stratford's Tax Collector's website indicates the *assessed tax value* on the property is $155,400. Counsel has also shared that document with probation. Additionally, that website suggests taxes were current as of 2018 (the last available date).

3. Mr. Galpin's brother, Christopher Galpin of West Haven, will co-sign an appropriate bond on Mr. Galpin's behalf. Additionally, should the Court for any reason find Mrs. Galpin to be an unsuitable third-party custodian, Christopher Galpin is willing to serve in that role and can provide Mr. Galpin housing. Christopher and his wife have no children.

4. Appropriate travel restrictions.

5. Mr. Galpin and his counsel presume that the standard conditions of release will apply as well of those customary to sex offense cases. They leave those to the court's discretion but have no objection to their imposition. Importantly, those include, but are not limited to, limitations on internet access.

---

[1] This is consistent with the amortization of a $228,000 mortgage with no-down payment at a hypothetical interest rate of 6%. *See Amortization Calculator/Table* available at http://mortgage-x.com/calculators/results.asp (accessed 6/29/20).

6. Curfews or home confinement as the Court views appropriate. Mr. Galpin has longstanding employment, *infra*, which he hopes to salvage and maintain. Additionally, such conditions could be enforced by location monitoring.

## II.   THE FACTORS SET FORTH IN 18 U.S.C. §3142(g) WARRANT RELEASE PURSUANT TO THE PROPOSED CONDITIONS.

Mr. Galpin is a lifelong resident of Connecticut who is supported by a flabbergasted but tight-knit family. Not only is this his first interaction with the criminal justice system, he has longstanding history of gainful employment. The proposed conditions, against this backdrop of stability and the notice these charges give his family, are adequate to rebut the presumption of detention set forth in 18 U.S.C. 3142(e)(3)(E). Moreover, in light of these conditions the government cannot clearly and convincingly prove danger, nor a risk of flight by a preponderance of the evidence. Mr. Galpin fully addresses the charges and his substantial community ties and family support herein.

### A.  Nature of the Charges, Uncharged Misconduct, and Weight of the Evidence.

Mr. Galpin is charged with one count of distribution of child pornography and one count of conspiracy to distribute in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1), respectively. Because the complaint in this matter contains allegations of conduct beyond the scope of the crimes charged and invokes the statutory presumption of detention, Mr. Galpin considers each portion of these circumstances separately.

First, Mr. Galpin does not dispute that, because of the character of the charges, the presumption of detention set forth in 18 U.S.C. §3142(e)(3)(E) applies. *See United States v. Crawford*, 2013 U.S.Dist. LEXIS 15295, 8 (D.Ct., 2013). However, he does not concede that is dispositive:

> In a presumption case such as this, a defendant bears a limited burden of production -- not a burden of persuasion -- to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight. *See United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) (presumption of dangerousness); *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986) (presumption of risk of flight); [*United States v.*] *Chimurenga*, 760 F.2d at 405. Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. *See Martir*, 782 F.2d at 1144.

> Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community. *See Rodriguez*, 950 F.2d at 88. The government retains the ultimate burden of persuasion by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight. *See Martir*, 782 F.2d at 1146; *Chimurenga*, 760 F.2d at 405-06.

*United States v. Mercedes,* 254 F.2d 433, 436 (2d Cir., 2001). This legal reality—particularly in light of the significant conditions Mr. Galpin has proposed—ought inform the court's analysis going forward.

Second, the material facts of the case are relatively discrete and distinguishable from secondary allegations of uncharged misconduct within the complaint. The allegation is that an undercover detective entered a private chat room on a social media and messaging platform that was devoted to the sexual exploitation of minors. While there, he corresponded with an individual, known only by his screen name, who shared multiple videos (the precise number is not known to the defense). Assuming the accuracy of the descriptions contained in the complaint, those videos constitute child pornography. The government alleged identity by way of outlining a series of administrative subpoenas to internet service providers that revealed the Internet Protocol (IP) address associated with Mr. Galpin's home. He was arrested by way of subsequent investigation, *infra*.

Third, the complaint contains further allegations that may support additional charges but are not relevant to the pending determination. The government will almost surely cite these allegations

in support of its detention motion. Therefore, Mr. Galpin addresses them here. First, there is an allegation that Mr. Galpin shared a video, or series of videos, that contain two females; one, according to the complaint, appears to be in her late teens and one in her early thirties; and included commentary identifying them as such. The inference from the complaint is that the two were relatives or family friends that Mr. Galpin surreptitiously recorded on a family vacation. The two women are depicted changing and on the beach in bathing suits. Second, the complaint alleges that Mr. Galpin bragged to the chat room that he had a sister-in-law living with him who he spied on, presumably in a similar fashion, and the another woman was also coming to live at the home to whom he could do the same thing. Finally, Mr. Galpin was arrested in New London where an FBI agent who had posed as a 14year-old girl met him at a prearranged location Mr. Galpin allegedly negotiated in another chatroom.

These allegations are beyond the scope of the crimes charged and are not therefore relevant to determinations of dangerousness. First, to the extent that the defendant has rebutted the §3142(e)(3)(E) presumption, these allegation introduce *other crimes* that are more clearly presumption cases than the one charged. To consider what might be production of child pornography or enticement of a minor is to re-impose the already rebutted presumption: Mr. Galpin should not have to bear this burden twice. Importantly, in *United States v. Byrd*, 969 F.2d 106 (5th Cir., 1991), the Fifth Circuit reversed a district court judge's detention order, for one count of receipt of child pornography by mail, where its finding of dangerousness was predicated on voluminous evidence of child sexual abuse beyond the scope of the charged count. The Fifth Circuit concluded that the government was not, then, entitled to a detention hearing as the Bail Reform Act was written at that point and could not use uncharged misconduct to bootstrap a non-violent offense in a violent offense. *See id*. Importantly, it did not hold that the crime charged had to, categorically,

5

Case 3:20-mj-00553-SALM   Document 10   Filed 06/29/20   Page 6 of 10

be a crime of violence; it only held there had to be a nexus between the charged offense and a crime of violence. *Id*. at 110 ("In other words, it is not necessary that the <u>charged offense</u> be a crime of violence; only that the <u>case involve</u> a crime of violence or any one or more of the <u>§ 3142(f)</u> factors. But the proof of a nexus between the non-violent offense charged and one or more of the six <u>§ 3142(f)</u> factors is crucial"). Here, the government has not proved that this case involves these additional crimes and it has not proved the nexus between them and the crime charged. While *Byrd* is rooted in a different section of the Bail Reform Act (§3142(f)), its logic applies with equal force.

Fourth, the weight of the evidence against the defendant is not clearly strong. The complaint neglects two important pieces of evidence the government has cited. First, it recites an uncounseled interview Mr. Galpin gave to the FBI. However, it share none of the circumstances of that interview. Accordingly, it is not clear that the inculpatory statements Mr. Galpin gave are admissible nor that they would survive a motion to suppress. Second, it relies on an interview given by Mr. Galpin's wife as evidence that the younger female depicted in the videos shared was a minor. This recitation of the evidence neglects the spousal privilege doctrine recognized in *Trammel v. United States*, 445 U.S. 40 (1980): it is not clear that Mrs. Galpin could actually be compelled to give this testimony against her husband at trial. As for the balance of the government's evidence, it turns on highly technical computer forensics which the defense will not be able to examine nor investigate for months.

The charges against Mr. Galpin are narrow. The defense does not dispute that, if proven, they are troubling. But Mr. Galpin is not charged with a contact offense nor, even attempting, contact at this juncture. Insofar as the Court considers dangerousness and the strength of the case in support of it, this all weighs in favor of release.

6

**B.   Mr. Galpin's Personal Characteristics And Ties To The Community Weigh Heavily In Favor Of Release.**

Mr. Galpin is a native of Connecticut and a member of a tight knit, local family. A graduate of Fairfield-Ward High School in Bridgeport, Mr. Galpin is one of four boys. Unfortunately, the family has twice been struck by tragedy: one of his brothers died in 2006 at the age of 22 and his other brother is estranged and suffers from severe mental health issues. Nonetheless, Mr. Galpin's slightly younger brother and wife remain close and supportive. Mr. Galpin's father passed in 2015.

Mr. Galpin has been employed at the same company for the past nine years. His employer, Uni-First, rents uniforms. Prior to that, Mr. Galpin was employed by GNK, a delivery service, and Fed-Ex before that. This is his first encounter with the law.

Evidenced by the bond package, Mr. Galpin's wife of twelve years remains supportive and involved. She is employed as business analyst at a major healthcare insurance company in Hartford. Moreover, Mr. Galpin's brother Chris is a financial analyst at a medical company. He lives with his wife in West Haven. Both are stable, supportive figures who will take seriously the roles they are undertaking.

**C.  Miscellaneous Considerations.**

As the Court knows, this hearing takes places against the backdrop of a once in a century pandemic. "*Corona Virus in the U.S.: Latest Map and Case Count,*" N.Y. Times, available at https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (accessed 6/29/20). Moreover, Mr. Galpin is charged in a complaint originating in the District of Columbia and may be subject to transfer pursuant to Federal Rule of Criminal Procedure 5. Should that event occur, transfer is not automatic: in normal time it can requires weeks, if not months, of waiting and leap frogging through facilities around the country. Now, the Bureau of Prisons is notoriously difficult to

7

navigate as a result of the COVID-19 pandemic in addition to the nationwide protests against police

brutality for which the BOP recently went into a heightened state of lockdown. R. Klar, "*Protests*

*Trigger strictest federal prison lockdown in 25 years*," The Hill, available at

https://thehill.com/homenews/news/500697-protests-trigger-strictest-federal-prison-lockdown-in-

25-years (accessed 6/29/20). Accordingly, Mr. Galpin may not only be subject to detention at Wyatt

in Rhode Island but any number of facilities in between for an extended period of time. Similarly,

there is also no evidence he will have ready access to counsel and the conditions in the District of

Columbia may well be more difficult than here. Importantly, courts have noted that extended

pretrial detention may violate due process and this should inform the Court's decision here. *See e.g.*

*United States v. Briggs*, 697 F.3d 98, 101 (2d Cir., 2012)(noting absence of bright line rule and

setting forth factors: "we consider the strength of the evidence justifying detention, the

government's responsibility for the delay in proceeding to trial, and the length of the detention

itself"). No one can adequately anticipate the nature or duration of a custodial transfer to

Washington, DC.

### D. The Circumstances And Conditions Proposed Operate To Alleviate Any Perception Of Danger.

Mr. Galpin has proposed conditions that rebut any perception of danger. The essence of the

allegations is the Mr. Galpin had a secret life online where he exchanged, admittedly illegal and

harmful, materials. But that furtiveness is not evidence of an intent to evade law enforcement nor

obstruct justice: it is no secret that the material at issue and the motivations that give rise to an

interest in it are highly stigmatized. Shame is as good a reason as any to hide this activity.

These allegations—truthful or otherwise—have demolished any secrets in Mr. Galpin's life.

In the event of release he will return to a wife and brother who are flabbergasted by what their loved

one is accused of. While they stand by him with remarkable aplomb, they also do not overlook the seriousness of this situation or the betrayal of which it hints. Should he return home, Mr. Galpin will be met by a loving and supportive family but also one that is shocked, skeptical, and unlikely to leave him to him unattended to. This will alone will be a significant bulwark against any possibility of criminal activity.

But a hawkish family life is not all that is in place. First, posting of the family home gives Mr. Galpin and his wife a significant stake in this arrangement succeeding. Moreover, the circumstances have already brought his brother to work with his wife and a team of sorts is assembling. Second, limitations on Mr. Galpin's access to electronic devices and the internet are a *fait accompli*: Mr. Galpin cannot do what his is accused of without the aid of an internet enabled device. Similarly, travel restrictions, potentially enforced by electronic monitoring can further limit any perceived danger. Finally, the presumptive monitoring and mental health conditions that are customary will also function as relief valves for any temptation toward criminal conduct.

### III.    CONCLUSION.

The government cannot prove by a preponderance of the evidence that Mr. Galpin poses a flight risk nor by clear and convincing evidence that he poses a danger to the community. Mr. Galpin has proposed conditions that can assure the Court of his appearance in court and behavior in the community. Accordingly, Mr. Galpin respectfully requests release.

Respectfully Submitted,

/s/Daniel M. Erwin/s/
By Daniel M. Erwin (ct28947)
FEDERAL DEFENDER'S OFFICE
10 Columbus Boulevard, 6th Floor
Hartford, CT 06106
Tel: (860) 493-6260
Fax: (860) 493-6269

9

Email: Daniel_Erwin@fd.org

<u>CERTIFICATION OF SERVICE</u>

     This is to certify that on June 29, 2020, a copy of the forgoing was filed electronically via the Court's CM/ECF system, and by that system, counsel for the Government has been provided with a copy of the forgoing.

/s/Daniel M. Erwin/s/<br>
Daniel M. Erwin